IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTOR THOMAS,                          *

    Petitioner,                        *          Civil Action No. RDB-14-2085

    v.                                 *          Criminal Action No. RDB-10-0491

UNITED STATES OF AMERICA,               *

    Respondent.                        *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>MEMORANDUM OPINION</u>**

    The *pro se* Petitioner Victor Thomas ("Petitioner" or "Thomas") has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 507). In support of this Motion, Petitioner argues that his trial and appellate attorneys rendered ineffective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution, U.S. Const. amend. VI.

    Currently pending before this Court are Petitioner's Motion to Vacate (ECF No. 507), Amended Motion to Vacate (ECF No. 519),[1] and Motion for Sentencing Transcripts in Forma Pauperis (ECF No. 445). Having reviewed the parties' submissions, this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, Petitioner's Motion to Vacate (ECF No. 507) is DENIED; Petitioner's Amended

---

[1] In his Amended Motion to Vacate (ECF No. 519), Petitioner supplements his first Motion with additional arguments to support his contention that he received ineffective assistance of counsel. Because *pro se* filings are construed liberally, this Court will treat Petitioner's Amended Motion to Vacate (ECF No. 519) as a supplement to his original Motion (ECF No. 507) and, accordingly, will consider all proffered arguments in disposing of the pending motions.

Motion to Vacate (ECF No. 519) is DENIED; and Petitioner's Motion for Sentencing Transcripts in Forma Pauperis (ECF No. 445) is MOOT.[2]

## BACKGROUND

In 2010, the Harford County Narcotics Task Force ("HCNTF") investigated a drug-distribution ring[3] which led to the arrest of Petitioner and Michael White ("White"). *State v. White*, 519 F. App'x 797, 799 (4th Cir. 2013). The investigation effort included the authorized wiretap of a cell phone number connected to Thomas and the interception of nearly two thousand phone calls associated with Thomas' number. *Id.* Following their arrests, Thomas and White were both charged with conspiracy to distribute and possess cocaine and cocaine base with intent to distribute the same, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (ECF No. 1). Additionally, Thomas was charged with violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm.[4]

Following a five-day trial, a jury convicted Petitioner on the conspiracy charge, but the jury was hung with respect to his gun possession charge. Jury Verdict, 1-2, ECF No. 324. This Court subsequently sentenced Thomas to 120 months imprisonment and 8 years supervised release. J., 2-3, ECF No. 433.

Thomas and White appealed their convictions to the United States Court of Appeals for the Fourth Circuit, contending that this Court erred in permitting Detective Brandon

---

[2] Petitioner filed this Motion in 2012 seeking the transcript of his sentencing hearing in order to prepare for his direct appeal to the United States Court of Appeals for the Fourth Circuit. As the Fourth Circuit decided Petitioner's case on April 3, 2013, the Motion is MOOT.

[3] A total of fourteen individuals were arrested in connection with this investigation. Thirteen of them, including Petitioner, were found guilty of violating Section 846. *White*, 519 F. App'x at 799 n.1.

[4] The Indictment (ECF No. 1) consisted of three charges: Count One, conspiracy to possess and distribute cocaine, which named Thomas and White, among others; Count Two, possession with intent to distribute cocaine, which named neither Thomas nor White; and Count Three, felon in possession of a firearm, which named Thomas alone. As such, although Thomas and White were charged with conspiracy to distribute and possess cocaine and cocaine base with intent to distribute the same, they were not separately charged with the offense of possession with intent to distribute cocaine.

Underhill ("Underhill") to testify as an expert witness without explaining the methodology he employed to decipher drug jargon, as well as failing to adopt adequate safeguards to avoid jury confusion given Underhill's testimony as both a fact and expert witness.[5] *White*, 519 F. App'x at 806-09. The Fourth Circuit noted that this Court had erred by failing to employ methods to help jurors understand that Underhill's lay testimony did not merit additional weight simply because he also testified as an expert. *Id.* at 809. Nevertheless, the Fourth Circuit rejected Thomas and White's arguments, explaining that any error by this Court was neither "obvious" nor "affect[ed] substantial rights." *Id.* Accordingly, the Fourth Circuit affirmed the jury verdict on all counts. *Id.* at 811. Thomas subsequently filed the pending Motion to Vacate (ECF No. 507) and Amended Motion to Vacate (ECF No. 519) pursuant to 28 U.S.C. § 2255. In these Motions, Thomas argues that both his trial and appellate attorneys provided ineffective assistance of counsel, in violation of his Sixth Amendment right to counsel.

## STANDARD OF REVIEW

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) the court lacked "jurisdiction to impose the

---

[5] Thomas and White made several additional arguments on appeal. They contended that this Court erred by declining to suppress evidence retrieved via wiretap. *White*, 519 F. App'x at 799. They also argued that admission of their criminal history under Rule 404(b) of the Federal Rules of Evidence was unduly prejudicial. *Id.* at 804. They contended that Detective Underhill lacked sufficient credentials for portions of his expert testimony. *Id.* Furthermore, Thomas and White argued that this Court erred in declining to give a multiple conspiracies jury instruction and that the Government presented insufficient evidence to support a conspiracy conviction. *Id.* at 810-11. The Fourth Circuit rejected all of these arguments. *Id.* at 799.

sentence, . . . [(3)] the sentence was in excess of the maximum authorized by law, or [(4) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255. "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

## ANALYSIS

Petitioner presents numerous grounds on which his appellate and trial attorneys provided ineffective assistance of counsel. Specifically, he contends that his trial counsel failed to: (1) object to the qualifications of the Government's expert witness, Brandon Underhill, as well as the manner in which he presented lay and expert testimony; (2) object to the jury instructions on various grounds; (3) object to the enhanced sentence imposed by the Court; (4) seek a plea offer from the Government; (5) inform him of his right to testify at trial; and (6) obtain Petitioner's consent prior to informing the jury in his opening statement that Petitioner was "guilty" of distribution. With respect to appellate counsel, Petitioner argues that counsel failed to: (1) raise certain issues on appeal; (2) seek a rehearing or an *en banc* hearing in the Fourth Circuit; and (3) file a writ of certiorari with the United States Supreme Court.

In order to establish a claim for ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 671 (1984). First, Petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688. In assessing

whether counsel's performance was unconstitutionally deficient, courts adopt a "strong presumption" that an attorney's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689. Second, Petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687. In order to establish this level of prejudice, Petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding[s] would have been different." *Id.* at 694. Satisfying either of these two prongs alone is not sufficient; rather, Petitioner must meet both prongs of the *Strickland* test to obtain relief. *Id.* at 687.

This Court first addresses Petitioner's claims against trial counsel, and then turns to his claims against appellate counsel.

## I.  Trial Counsel

Petitioner argues that he received ineffective assistance of counsel at his trial. Specifically, he contends that his trial counsel failed to: (1) object to the qualifications of the Government's expert witness, Brandon Underhill, and Underhill's ensuing presentation of lay and expert testimony; (2) object to the jury instructions on various grounds; (3) object to the enhanced sentence imposed by the Court; (4) seek a plea offer from the Government; (5) inform him of his right to testify at trial; and (6) secure consent from Petitioner prior to using the term "guilty" in his opening statement. For the reasons that follow, all of these claims are meritless.

### A.  Failure to Object to Testimony of the Government's Expert Witness

Thomas claims that trial counsel was ineffective for failing to object to Underhill's qualification as an expert. Mot. to Vacate, p.11, ECF No. 507. He also argues that his trial

counsel acted unreasonably by failing to "object to Detective Underhill['s] testimony as both an expert and fact witness during trial." Am. Mot. to Vacate, p.8, ECF 519. In support of these claims, Petitioner likens Underhill's testimony to that of the Government's expert witness in *United States v. Garcia*, 752 F.3d 382 (4th Cir. 2014), where the Fourth Circuit vacated a defendant's conspiracy conviction because the district court failed to adopt adequate "safeguards to protect the jury from conflating [the expert's] testimony as an expert and fact witness." 752 F.3d at 391-92 (noting that, "Agent Dayton's testimony was so extensive and most likely highly influential in the jury's evaluation of the Government's case against Garcia, we are constrained to hold that these flaws deprived [the defendant] of a fair trial").

Raising an objection is a tactical decision. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998). As this Court has repeatedly held, courts grant "substantial deference" to the tactical decisions of defense attorneys when reviewing ineffective assistance of counsel claims. *Sterling v. United States*, Civ. No. RDB 11-3209, 2013 WL 588973, at *5 (D. Md. Feb. 13, 2013). Indeed, the failure to object can only be deemed constitutionally ineffective if the objection was "so obvious that it would have 'struck those learned in the law like a bucket of ice water.'" *Higgs v. United States*, 711 F. Supp. 2d 479, 532 (D. Md. 2010) (quoting *Humphries v. Ozmint*, 366 F.3d at 276 (4th Cir. 2004)).

In this case, trial counsel's decision not to object to Mr. Underhill's qualification as an expert was a tactical decision, not ineffective assistance of counsel. Given Underhill's extensive drug enforcement experience, including his review of "between 10,000 and 15,000 drug-related conversations," Gov't Response, p. 9, ECF 543, counsel made a strategic

decision not to re-examine Underhill's expertise.[6] *See Garcia*, 752 F.3d at 391 (specifying that, "it is the quality of Agent['s] experience, especially [their] exclusive focus on narcotics trafficking . . . which [ ] district court[s]" focus on when determining if a drug "decoding" expert is qualified). Indeed, "courts of appeals [sic] have routinely held that law enforcement officers with extensive drug experience are qualified to give expert testimony on the meaning of drug-related code words." *United States v. Wilson*, 484 F.3d 267, 275 (4th Cir. 2007). Any additional questioning was thus unnecessary.

Likewise, trial counsel's decision to withhold objections to the manner in which Underhill presented fact and expert opinion testimony was not "objectively unreasonable." Although the Fourth Circuit held that this Court erred by failing to adopt adequate safeguards to prevent jury confusion regarding Underhill's dual role as fact and expert witness, it also held that such an error was neither "obvious" nor "affect[ed] substantial rights." *White*, 519 F. App'x at 809. Accordingly, unlike the defendant in *Garcia*, Petitioner still received a fair trial.[7] *Id.* Thus, although cases like *Garcia*, decided over two years after Petitioner's trial, emphasize the need for courts to adopt adequate safeguards to prevent jury

---

[6] Underhill testified that he had ten years of experience at the Harford County Sheriff's Office and had been assigned to the Harford County drug task force for over four years. Trial Tr. vol. 1, 149:6-17, Aug. 30, 2011, ECF No. 447. He explained that he was involved in hundreds of arrests involving drug investigations. *Id.* at 150:5-9. He testified that he had "participated in or served as the author of" about 200 search warrant affidavits related to narcotics. *Id.* at 150:23-25, 151:1-3. Finally, he estimated that he had listened to between 10,000 and 15,000 drug related conversations over the course of his career. *Id.* at 152: 24-25; 153: 1-2.

[7] The Supreme Court has defined "affected substantial rights" as "error[s] that must be prejudicial, [i.e.,] affecting the outcome of the district court proceedings." *United States v. Olano*, 507 US 725, 725 (1993). Applying this definition to the case at hand, several questions remain unanswered: (1) did the conflation of fact and expert testimony *actually* confuse the jury and if so, to what degree; (2) did the overwhelming evidence indicating the Petitioner's guilt negate the impact of the lack of safeguards; (3) does counsel have any duty to object to such conflation or does the onus rest primarily with the court to institute safeguards; and (4) if the court had imposed safeguards, would that have changed the outcome of the trial? Petitioner has provided no concrete evidence addressing any of these items and without such evidence, no claim for inadequate counsel can stand on this ground.

confusion between fact and expert testimony, trial counsel's failure to object on this issue was not so obviously erroneous or unreasonable as to be constitutionally ineffective.

Even assuming that trial counsel's actions established inadequate safeguards for jurors to distinguish between Underhill's fact and expert witness testimony, Thomas fails to demonstrate any resulting prejudice. He simply asserts that "had the agents [sic] testimony been excluded, [sic] the Petitioner would not have been convicted . . . [because the case was] developed and solely built on wiretap evidence only" and that "had counsel moved to object to the agent doubling up as a fact witness and as an expert, the trial Court would have been forced to make a legal decision." Am. Mot. to Vacate, p. 8-9, ECF No. 519. Under *Strickland*, Petitioner bears the burden of demonstrating a reasonable probability that the trial result would have been different had his counsel objected to the form in which Underhill's testimony was presented. "Conclusory allegations," however, do not sustain this burden. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). Absent any additional evidence beyond these conclusory allegations, Petitioner has failed to meet his burden. Thomas failed to demonstrate any prejudice on direct appeal, and he has not offered any new arguments to obtain a different result on collateral review.

## B. Failure to Object to Jury Instructions

Petitioner next contends that trial counsel was ineffective for failing to object to the jury instructions presented at trial. He cites three main defects in these instructions. First, he argues that "trial counsel was ineffective in failing to object to and challenge the disparity of drug quantities . . . represented by the indictment and the District Court's jury instructions." Mot. to Vacate, p. 17, ECF No. 507. Second, Petitioner argues that the jury instructions

induced the jury "to accredit Agent Underhill as having possessed a specialized expert training for deciphering common language used in telephone conversations to be drug codes that serve transactions." *Id.* at 17-18. Finally, the instructions omitted "requisite *Pinkerton* principles of jury fact-finding [sic] for each individual alleged co-conspirator." *Id.* at 20. Specifically, Petitioner contends that this Court "failed to instruct the jury that in establishing the threshold drug quantities . . . it must, pursuant to *Pinkerton*,[8] determine the quantity attributable to each co-conspirator." *Id.* at 21.

Once again, it is well-established that trial counsels' decisions not to object are tactical ones warranting deference. *See United States v. Fleming Macon Pleasants*, 71 F. App'x 182, 185 (4th Cir. 2003) ("Counsel made the tactical decision not to object. We cannot conclude that counsel made an error so serious that he was not functioning as the counsel required by the Sixth Amendment."); *Richardson v. United States*, Crim. No. RDB-05-0597, 2015 WL 5736010, at *8 (D. Md. Sept. 28, 2015) ("The decision whether or not to object to certain evidence falls squarely within the trial strategy category.").

In this case, any alleged disparity of drug quantities did not form a reasonable basis for an objection. The indictment alleged that Petitioner conspired to distribute and possess "5 grams *or more*" of crack cocaine. Indictment, p.3, ECF No.1 (emphasis added). An August 3, 2010 Amendment to 21 U.S.C. § 841, issued just prior to the indictment of August 11,

---

[8] Under the rule established by the United States Supreme Court in *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946), a defendant is "liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." *United States v. Ashley*, 606 F.3d 135, 142-43 (4th Cir. 2010). To impose the sentencing enhancements of Section 841(b) in a conviction for conspiracy to possess or distribute cocaine, the jury must determine the quantity of drugs attributable to each individual defendant by applying these principles. *United States v. Brooks*, 524 F.3d 549, 558-59 (4th Cir. 2008). The jury in this case was instructed accordingly. Trial Tr. vol. 5, 142:5-25, 143:1-22, Sept. 7, 2011, ECF No. 451.

2010, raised the requirements for imposing certain penalties on offenders with violations involving "5 grams" to those involving "28 grams" of crack cocaine as indicated in Section 841(b)(1)(B)(iii). The parties agreed to have the verdict sheet reflect the recent amendment by asking the jury to place a check mark next to the words "28 grams or more" if they found Petitioner guilty of that amount. Resp. in Opp'n Ex. 5, ECF No. 543-5; Jury Verdict at 1, ECF No. 324. This is not a "disparity," but a means of allowing the jury to indicate how much crack cocaine it believed Petitioner had conspired to distribute and possess. Because the jury found that Petitioner's conspiracy involved 28 grams or more, it necessarily also found that the conspiracy involved 5 grams or more. Any objection would thus be groundless.

With regards to Thomas's second argument, it is unclear how the jury instructions misled the jury about Underhill's credentials as alleged. When this Court qualified Underhill to testify as an expert, it cautioned the jury that "[a]s with all witness[es], [it was] up to [them] to accept or reject [Underhill's] testimony." *White*, 519 F. App'x at 807. At the end of trial, this Court explained in its Jury instructions:

> In weighing this [expert] opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

*White*, 519 F. App'x at 807-8. This Court, therefore, did not instruct the jury to give Underhill's testimony special deference. Instead, this Court instructed the jurors to weigh

Underhill's testimony just as they would any other testimony. Trial counsel's tactical decision not to object to these instructions was not prejudicial, as the jurors were adequately informed about their responsibility to carefully consider the veracity of Underhill's testimony rather than merely accept his words as truth.

Finally, contrary to Petitioner's assertions, the jury instructions and verdict sheet required the jury to determine the type and quantity of drug attributable to Petitioner. In its instructions to the jury, this Court explained that if the jury found that the Government had proven Thomas and White guilty of the conspiracy charge, then they must determine, beyond a reasonable doubt, what type and quantity of controlled substances are attributable to each defendant. Trial Tr. vol. 5, 141:23-25; 142:1-4. Accordingly, the verdict form distributed to the jury provided means for the jury to identify both the type and quantity of drug attributable to the Petitioner. Jury Verdict, p.1, ECF No. 324. Failing to object on these grounds did not prejudice Petitioner because the verdict form clearly required the jury to make a fact finding concerning the type and quantity of drug attributable to him.

## C.  Failure to Object to the Enhanced Sentence Imposed by this Court

Petitioner next contends that his trial counsel provided ineffective assistance by failing to object to the sentence enhancement this Court imposed pursuant to 21 U.S.C. § 851. He argues that one of the predicate convictions used to enhance his sentence occurred in the context of an *Alford* plea[9] and, therefore, improperly formed the basis of a sentence enhancement.

---

[9] "An *Alford* plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest." *United States v. King*, 673 F.3d 274, 281 (4th Cir. 2012) (citation and internal quotation marks omitted).

Section 851 of Title 21 of the United States Code sets forth the proceedings that govern the sentencing enhancements of 21 U.S.C. § 841. Section 841(b)(1)(B) imposes a mandatory minimum sentence of ten years upon an individual who, having a prior conviction of a felony drug offense, is convicted of possessing twenty eight grams or more of crack cocaine with an intent to distribute it.[10] A "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States . . . that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). State misdemeanors punishable by imprisonment of more than one year constitute felony drug offenses under 21 U.S.C. § 802(44). *Burgess v. United States*, 553 U.S. 124, 129 (2008).

In its Notice of Enhanced Penalty (ECF No. 297) and at the sentencing hearing, the government cited Petitioner's 1992 conviction for the crime of Conspiracy to Distribute Cocaine and his 1997 conviction for Attempted Distribution of Cocaine. Although Petitioner entered an *Alford* plea in the 1992 conviction, the Fourth Circuit "does not categorically prohibit the employment of a conviction obtained from an *Alford* plea as a predicate offense for a statutory enhancement." *United States v. Mouzone*, 687 F.3d 207, 221(4th Cir. 2012). Yet, even if it did, trial counsel's failure to object would not have prejudiced Petitioner because Section 841 requires only one prior conviction of a felony drug offense to trigger the mandatory enhanced sentence of ten years. Petitioner's second felony

---

[10] The enhancement also applies when the conviction is for conspiracy to possess with an intent to distribute. *See Boyce v. United States*, Civ. No. CCB-11-3451, 2014 WL 1757932, at *2-3 (D. Md. Apr. 29, 2014) (holding that Defendant's conviction for conspiracy to distribute and possess with the intent to distribute narcotics warranted an enhanced sentence pursuant to 21 U.S.C. § 841(b)(1)(B)).

conviction in 1997 was not a product of an *Alford* plea and, accordingly, provides an independent basis for his enhanced sentence.

### D. Failure to Seek a Plea Agreement

Petitioner alleges that he asked his trial counsel to seek a five-year plea offer from the Government, but that counsel refused and told him that the government would not accept such an offer. He argues that he was "unable to make an informed decision" concerning a potential plea agreement because trial counsel did not "inform him of the 851 enhancement that would prevent a 5 year deal offer." Reply, p. 2, ECF No. 544.

The Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). To establish that his trial counsel was ineffective in seeking a plea bargain, "[Thomas] must show that (1) counsel's failures fell below an objective standard of reasonableness and (2) counsel's deficient performance was prejudicial." *United States v. Ray*, No. 15-7465, 2016 WL 1259408, at *1 (4th Cir. Mar. 31, 2016). Prejudice arises in the plea bargaining context when, "absent deficient advice, the defendant would have accepted a plea that would have resulted in a less severe conviction, sentence, or both." *Id.*

In this case, trial counsel's actions were neither unreasonable nor prejudicial. A series of emails between trial counsel and the government, submitted as Exhibit Nine to Government's Response in Opposition (ECF No. 543-9), reveals that trial counsel was seeking a plea agreement in 2011 *and* that he had discussed the possibility of reaching a plea agreement with Petitioner. Moreover, the record flatly contradicts Petitioner's claim that he was unaware of a potential sentence enhancement. At his sentencing hearing, Petitioner admitted to this Court that "before trial, [trial counsel] did mention that I could face an

enhanced penalty." Sentencing Tr., 14:20-21, ECF No. 459. This Court then explained that "for the purposes of any Section 2255 petition [that] is later filed, the record is abundantly clear that [trial counsel] told [Petitioner] about the enhancement." *Id.* at 16:11-13. Far from exhibiting an "objectively unreasonable" performance, Petitioner's counsel attempted to obtain the plea agreement at issue and communicated the risk of an enhanced penalty. In light of counsel's efforts and communications, Petitioner chose to go to trial. He understood the risk of an enhanced sentence, and thus suffered no prejudice from counsel's actions.

### E. Failure to Notify Defendant about His Right to Testify at Trial

Petitioner contends that, had he been informed of his right to testify at trial, "he would have exercised [that right]." Am. Mot. to Vacate, p. 3, ECF No. 519. Petitioner also argues in his Reply that his lawyer did not advise him about his right to testify, but rather commanded, "you are not going to testify." Pet'r's Reply, p. 3, ECF No. 544. However, Petitioners prior representations to this Court contradict these allegations. Before the close of trial, this Court engaged in the following colloquy with Defendant:

> THE COURT: I know I went over this with you last week, but I want to go over this with you again now with respect to your rights under the Fifth Amendment to the United States Constitution.
>
> . . .
>
> Mr. Thomas, have you had an opportunity to discuss your rights with Mr. Purpura with respect to whether or not you want to testify in this case?
>
> DEFENDANT THOMAS: Yes sir, I did.

| | |
|---|---|
| THE COURT: | And having discussed this with Mr. Purpura, Mr. Thomas, its your choice not to testify, is that correct? |
| DEFENDANT THOMAS: | Correct. |
| | . . . |
| THE COURT: | And are you satisfied that both of you [Thomas and White] have had an opportunity to knowingly and intelligently and with a sufficient period of time to discuss this with both of your attorneys? Mr. Thomas? |
| DEFENDANT THOMAS: | Yes, Your Honor. |

Resp. in Opp'n Ex., p.10, ECF No. 543-10. The record, therefore, is quite clear that Petitioner had discussed his right to testify with his trial counsel, and that he "knowingly" decided not to exercise that right. Thomas offers no evidence that counsel commanded him to perjure himself in the colloquy. Absent such evidence, counsel did not provide ineffective assistance of counsel.

### F.  Conceding Guilt During Opening Arguments

Finally, Thomas argues that his trial counsel provided ineffective assistance because counsel conceded to the jury, in his opening statement, that Thomas was guilty of distributing cocaine and cocaine base. He explains that "trial counsel did not consult with [Petitioner] before making this concession of guilt," nor would he have approved of the concession had he been consulted. Am. Mot. to Vacate at 9. Thomas did not face charges for individual distribution of cocaine and cocaine base; rather, he was charged with *conspiracy* to distribute and possess with intent to distribute cocaine and cocaine base. Trial counsel clearly did not concede guilt on any issue which Petitioner was charged in the indictment.

Conceding guilt on one issue in the face of overwhelming evidence to pursue a more favorable overall outcome does not constitute ineffective assistance of counsel. Distinguishing between "tactical retreats" and "complete surrender[s]," the United States Court of Appeals for the Fourth Circuit in *Young v. Catoe*, 205 F.3d 750 (4th Cir. 2000), held that Defense counsel's decision to characterize his client as "technically guilty" in closing arguments was not ineffective assistance because "it was necessary for counsel to retreat from an unlikely acquittal of a patently guilty client, so that he might attain the more realistic goal" of avoiding the imposition of the death penalty. 205 F.3d at 758-60 (internal quotation marks and citation omitted); *see also Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) (finding that attorney's concession of guilt on a kidnapping charge in order to pursue a verdict of guilty but mentally ill was a "tactical retreat" in light of the "overwhelming evidence" against his client). Moreover, trial lawyers have no obligation to obtain their clients' consent to "every tactical decision." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988)). Rather, defendants have complete authority only over a handful of decisions, such as whether to plead guilty, waive a jury, testify, or take an appeal. *Id.* (quotations and citations omitted). In *Nixon*, the United States Supreme Court distinguished between merely conceding guilt on a particular issue and the more serious decision to plead guilty. *Id.* at 187-88. The latter decision "is not simply a strategic choice" but "itself a conviction" as it obviates the Government's obligation to present evidence and waives the defendant's constitutional rights. *Id.* at 187-188 (internal quotation marks and citations omitted).

Here, as in *Young* and *Bell*, trial counsel faced overwhelming evidence against his client and chose to make a tactical retreat in an effort to avoid a conspiracy conviction. At

16

trial, police officers testified that they had witnessed Petitioner engage in suspicious meetings

at a gas station and a car wash, where Petitioner neither pumped gas nor washed his car.

Trial Tr. vol. 2, 138:11-24 Aug. 30, 2011, ECF No. 448; Trial Tr. vol. 3, 61:2-23, Aug. 31,

2011, ECF No. 449. They testified that police had seized cocaine from Thomas's vehicle.

Trial Tr. vol. 3, 101:13-25, Aug. 31, 2011. Cell phone conversations between Petitioner and

others, obtained via wiretap, were played to the jury. Trial Tr. vol. 2, 96-98, Aug. 30, 2011.

An expert witness interpreted the drug jargon used by Petitioner in those phone calls. *See,*

*e.g.*, Trial Tr. vol. 2, 109:1-2, Aug. 30, 2011 ("White girl is a very common terminology to

refer to powder cocaine."). In light of this extensive evidence, trial counsel cleverly sought to

distinguish between an individual distribution charge, which the Petitioner was not facing,

but was likely guilty of, and a conspiracy charge, which requires an agreement to distribute

between several individuals.[11] Thus, counsel in no way conceded guilt in a prejudicial manner

without his client's consent; instead, he made a rational choice falling well within the "wide

range of reasonable professional assistance," as counsel wanted the jury to see Petitioner as a

small-time drug dealer rather than a member of a mulita-person, drug-distribution ring and

therefore guilty of the crime Petitioner was charged with, conspiracy. *Strickland*, 466 U.S. at

689.

  Moreover, trial counsel's failure to obtain Petitioner's consent is not in and of itself

grounds for demonstrating inadequate assistance of counsel. Indeed, the United States Court

---

[11] The trial record indicates that counsel admitted Petitioner's drug activity, which the evidence at trial would support, in order to focus the Jury's attention on the other elements of conspiracy, which, counsel felt, the Government would have a harder time proving. During his opening argument, trial counsel stated in relevant part, "the evidence will show that [my client] did distribute various quantities of cocaine . . . you may ask now that I've told you he's guilty of distribution . . . why are we here? Because he's not charged with distribution; He's charged with conspiring, an agreement between two or more people . . . not simple distribution on the part of my client, but this greater agreement involving multiple people" (*See* ECF 543, Exhibit 11).

of Appeals for the Fourth Circuit has held that a "trial counsel's performance cannot be constitutionally deficient based solely on his failure to seek [a client's] consent before admitting guilt to the jury. Instead, [a Petitioner] must show that counsel's decision to admit guilt was objectively unreasonable under the Strickland standard." *McNeill v. Polk*, 476 F.3d 206, 217 (4th Cir. 2007) (internal citation omitted). Petitioner has failed to show why his counsel's concessions were objectively unreasonable, and even if they were, Petitioner is incapable of proving that such conduct resulted in material prejudice. *See United States v Holman*, 314 F.3d 837, 843 (7th Cir. 2002) (holding that although counsel's failure to obtain his client's consent prior to conceding guilt was "deficient" conduct under the first prong of the *Strickland* test, Petitioner suffered no prejudice because there was not a "reasonable probability" that such behavior would "affect[] the trial's outcome[,]" particularly in the face of overwhelming evidence of guilt). Thus, Petitioner has failed to establish that his trial counsel provided ineffective assistance of counsel due to the concessions made at trial.

## II.    Appellate Counsel

Thomas argues that his appellate counsel provided ineffective assistance of counsel because he failed (1) to raise certain issues on appeal; (2) to seek a rehearing or an *en banc* hearing in the Fourth Circuit; and (3) to file a writ of certiorari with the United States Supreme Court. Once again, Petitioner's ineffective assistance claim fails on all grounds.

### A.  Failure to Raise Certain Issues on Appeal

Thomas argues that "appellate counsel forewent development and raising of numerous meritorious claims which are sufficiently on the record for appellate review," directing this Court to a portion of his Motion in which he argues that his trial counsel was ineffective for many of the reasons stated *supra*. Mot. to Vacate at 5. It appears that he is

arguing, at least in part, that appellate counsel was ineffective for failing to challenge the admission of Underhill's expert testimony, the disparity in drug quantity enumerated on the indictment and jury instructions, and the imposition of a sentence enhancement. *Id.* at 5, 11.

"Effective assistance of counsel does not require the presentation of all issues on appeal that may have merit." *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008). Rather, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel raised numerous issues on appeal, all of which were rejected by the Fourth Circuit. *See White*, 519 F. App'x at 799. The record does not reveal, and Petitioner has not identified, any unpursued issues that are "clearly stronger" than those that appellate counsel raised. For the reasons set forth in Section I of this opinion, Petitioner's claims concerning the admissibility of Underhill's expert testimony, the drug quantity listed in his indictment, and the propriety of his sentence enhancement lack any merit. Appellate counsel, therefore, did not render ineffective assistance for failing to raise these claims on appeal.

### B. Failure to Seek a Rehearing or En Banc Review

Second, Petitioner argues that appellate counsel's failure to "petition[ ] the Court of Appeals for an empanelment of the Court en banc for a rehearing" amounts to ineffective assistance of counsel. Mot. to Vacate at 6. Specifically, Petitioner contends that appellate counsel acted unreasonably by withdrawing as counsel prematurely and thereby not fulfilling his duties to assist Petitioner with his full range of appeal rights (ECF No. 519 at 4).

This assertion overlooks the well-established principle that there is no constitutional right to counsel for discretionary appeals, including, inter alia, seeking a rehearing or a

rehearing en banc. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *U.S. v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). As such, failure to seek a rehearing or rehearing en banc cannot serve as the basis for an ineffective assistance of counsel claim. *White v. United States*, No. 7:08CR54, 2013 WL 1497579, at *4 (W.D. VA. April 11, 2013) ("[A] petition for rehearing or rehearing en banc is a discretionary appeal and thus there is no constitutional right to counsel to pursue a petition for rehearing); *see also Loc Huu Bui v. United States*, 5:10-CR-205-FL-1, 2014 WL 582954, at *9 (E.D .N.C. Feb. 13, 2014); *see also Aylor v. United States*, Civ. No. PJM 10-1469, 2011 WL 2118694, at *6 (D. Md. May 27, 2011). Therefore, Thomas' counsel did not render ineffective assistance by choosing not to pursue a rehearing or en banc review.

### C.  Failure to File a Writ of *Certiorari*

Finally, Petitioner alleges that he "requested appellate Counsel to file a petition for *certiorari* to the United States Supreme Court, and Counsel failed to do so, thereby violating his duty under the CJA Plan."[12] Mot. to Vacate at 5. To support his claim, Petitioner cites to *Wilkins v. United States*, 441 U.S. 468 (1979) (vacating judgment of the Court of Appeals and remanding for further proceedings after finding that appellate counsel promised that he had filed a petition for *certiorari* but in fact had not); *United States v. Tejeda-Ramirez*, 436 F. App'x 172 (4th Cir. 2011) (reversing district court finding that appellate counsel fulfilled the requirements of the CJA Plan because the *pro se* petitioner was not given time to respond to appellant counsel's affidavit); *United States v. Smith*, 321 F. App'x 229 (4th Cir. 2008) (recalling mandate, vacating, and reentering judgment after finding that appellate counsel offered to

---

[12] An appointed attorney's responsibilities to an unsuccessful appellant are outlined in the *Plan of the United States Court of Appeals for the Fourth Circuit, In Implementation of the Criminal Justice Act* ("CJA Plan"), which implements the Criminal Justice Act of 1984. *See* 18 U.S.C. § 3006A.

file a petition for writ of *certiorari* but failed to do so as requested and did not file a motion to withdraw from the case); *Nnebe v. United States*, 534 F.3d 87 (2d Cir. 2008) (recalling mandate, vacating, and remanding after appellate counsel promised to file a petition for writ of *certiorari* but failed to do so, in violation of the Second Circuit's CJA plan).

Despite Petitioner's allegations, appellate counsel complied with the CJA Plan in this Circuit. In relevant part, the CJA Plan of the Fourth Circuit provides:

> Every attorney, including retained counsel, who represents a defendant in this court shall continue to represent his client after termination of the appeal unless relieved of further responsibility by this court or the Supreme Court. Where counsel has not been relieved: If the judgment of this court is adverse to the defendant, counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of certiorari. If the defendant, in writing, so requests *and in counsel's considered judgment there are grounds for seeking Supreme Court review*, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant.
>
> . . .
>
> If the appellant requests that a petition for writ of certiorari be filed *but counsel believes that such a petition would be frivolous*, counsel may file a motion to withdraw with this court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of certiorari. The motion must reflect that a copy was served on the client. If the United States seeks a writ of certiorari to review a judgment of this court, counsel shall take all necessary steps to oppose the United States' petition.

CJA Plan § 5, ¶ 2 (emphasis added).

The Fourth Circuit issued its judgment in Petitioner's direct appeal on April 3, 2013. Two days later, appellate counsel certified in a Certiorari Status Form that he had "advised [his] client regarding his/her certiorari rights and filed a motion to withdraw as counsel in the Fourth Circuit on the grounds that a certiorari petition would be frivolous." Resp. in

Opp'n Ex. 1, ECF No. 543-1. Counsel subsequently served Petitioner with the Certiorari Status Form, which explained that he had a ninety-day deadline to file a petition for writ of *certiorari. Id.* The Fourth Circuit subsequently granted counsel's Motion to Withdraw. Counsel thus satisfied his obligations under the CJA Plan. Despite clear notice of the ninety-day filing period, Thomas did not file a petition for writ of *certiorari* until September 3, 2013, some two months after the deadline.

In contrast, counsel in *Wilkins* specifically represented that he had filed a petition for *certiorari*.[13] Similarly, counsel in in *Smith* and *Nnebe* offered to file such a petition. Thomas offers no challenge to the government's representation of the facts following the Fourth Circuit's upholding of his conviction. Instead, he merely asserts that he requested appellate counsel to file the petitioner for writ of *certiorari*, that his counsel refused to do so, and that this refusal violated the CJA plan. "Conclusory allegations contained in a § 2255 petition," however, do not suffice to sustain a claim like this one. *Dyes*, 730 F.3d at 359 (quoting *Thomas*, 221 F.3d at 437). As Petitioner offers no set of facts sufficient to establish a violation of the CJA plan, he cannot show that counsel acted unreasonably.

## **CONCLUSION**

For the foregoing reasons, Petitioner's Motion to Vacate (ECF No. 507) is DENIED, Petitioner's Amended Motion to Vacate (ECF No. 519) is DENIED; and Petitioner's Motion for Sentencing Transcripts in Forma Pauperis (ECF No. 445) is MOOT. Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this

---

[13] Additionally, when the Supreme Court decided *Wilkins*, all United States Courts of Appeal required court-appointed counsel to file a petition for writ of *certiorari* upon a client's request. *Wilkins*, 441 U.S. at 469. The Supreme Court has since required Courts of Appeal to "allow for relieving a lawyer of the duty to file a petition for certiorari if the petition would present only frivolous claims." *Austin v. United States*, 513 U.S. 5, 8 (1994).

Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated:        September 26, 2016

                                                    _____/s/_____

                                                    Richard D. Bennett
                                                    United States District Judge